1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9   Robert Jaime Rosas,                    )   No. CV-06-3084-PHX-JWS (LOA)
                                           )
10            Petitioner,                  )   **REPORT AND RECOMMENDATION**
                                           )
11  vs.                                    )
                                           )
12  Dora B. Schriro, et al.,               )
                                           )
13            Respondents.                 )
                                           )
14  _____   )

15          This matter is before the Court on Petitioner's Petition for Writ of Habeas

16  Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  (docket # 7)

17  Respondents have filed an Answer (docket # 17) to which Petitioner has not replied despite

18  having been granted two extensions of time in which to do so.

19  **I.  Factual and Procedural Background**

20          On March 31, 2004, the State of Arizona charged Petitioner with two counts of

21  aggravated driving under the influence of intoxicating liquor or drugs on a driver's license

22  that had been suspended, canceled, or revoked, a class 4 felony.  (Respondents' Exh. A) The

23  State further alleged that Petitioner had eight historical prior felony convictions and that he

24  committed the current offenses while on parole for the most recent prior felony conviction.

25  (Respondents' Exhs. B-C)

26          On July 8, 2004, Petitioner and the State reached a plea agreement.

27  (Respondents' Exh. D) In exchange for Petitioner pleading guilty to an amended count 1 of

28  aggravated driving under the influence, a class four felony, with one prior felony conviction,

1  the State dismissed the second count of aggravated driving under the influence, the

2  allegations of seven additional prior felony convictions, and the allegation that the offense

3  was committed while Petitioner was on "Community Supervision" or parole.  (Respondents'

4  Exh. D at 1-2) The plea agreement also stipulated that "**Defendant shall be sentenced to**

5  **the Department of Corrections for 7.5 years and pay $250 DUI abatement fee**."

6  (Respondents' Exh. D at 1, ¶ 2)(emphasis in original).  The plea agreement further provided

7  that Petitioner "consents to judicial fact-finding by preponderance of the evidence as to any

8  aspect or enhancement of sentence," and that Petitioner waived "a trial by jury, *to determine*

9  *guilt and to determine any fact used to impose a sentence within the range stated above in*

10  *paragraph one* [which provides that a 7.5 year sentence may be imposed if the trial court

11  finds exceptional circumstances]."  (Respondents' Exh. D at 2-3, ¶¶ 7,10)(emphasis added).

12          On July 8, 2004, the trial court[1] held a change-of-plea hearing.  (Respondents'

13  Exh. E) Petitioner affirmed that he had read the plea agreement, discussed it with counsel,

14  and understood the agreement.  (Respondents' Exh. E at 6)  Petitioner advised the court that

15  he understood the sentencing range, the stipulated sentence of 7.5 years' imprisonment, and

16  the waiver of his right to have "any aggravating factors proven by a jury."  (Respondents'

17  Exh. E at 4-5, 8)  The court accepted the plea and entered judgment accordingly.

18  (Respondents' Exh. E at 13, Exh. F)

19          On September 15, 2004, the trial court conducted a sentencing hearing during

20  which it inquired about aggravating and mitigating factors.  (Respondents' Exh. G at 4) The

21  prosecutor noted that Petitioner "has a total [of] 8 prior felony convictions.  He pled with

22  one prior which you cannot, obviously, not use to aggravate him[2] but the other 7 prior felony

23

24          [1] The Honorable David O. Cunanan, Commissioner of the Superior Court, presided.

25          [2] Contrary to the prosecutor's statement, there is no State or federal prohibition on using
26  the same prior conviction to enhance and aggravate a sentence.  Neither Arizona nor federal law
    prohibit a court from using a prior conviction to first enhance the sentencing range, and then to
27  aggravate   the   sentence   within   that   enhanced   range.   Compare,  A.R.S.  §  13-
    702(C)(1)&(2)(forbidding this sort of double counting only when what triggered the enhanced
28  sentence stemmed from the threatened or actual infliction of serious physical injury or the

1  convictions are to substantiate, at least substantiating factors do outweigh mitigating factors

2  and 7.5 years would be appropriate." (Respondents' Exh. G at 4) Petitioner's counsel

3  stressed that although Petitioner was on parole when he committed the current offense, the

4  parole was never revoked and Petitioner successfully completed parole. (Respondents' Exh.

5  G at 4-5)

6        The trial court opined that "something less than 7.5-years might be appropriate

7  unless [an] aggravated term is appropriate," and recognized that "there is not a lot really you

8  can do because your other option is you go to trial and if you lose, you get a lot more time."

9  (Respondents' Exh. G at 5)  The trial court concluded that the aggravating circumstances —

10  including the number of prior felony convictions and the fact that Petitioner committed the

11  offense while on parole — substantially outweighed the mitigating circumstances of

12  Petitioner's successful completion of parole.  The court concluded that:

13        Based upon the totality of the circumstances, the Court does find that
          the number of prior felony convictions, the fact he was on parole
14        when this offense was committed as well as the facts of this offense
          substantially outweigh the mitigating factors in this particular case
15        and I do find that as a mitigating factor the strides you made while
          you were on parole.  Nonetheless, these aggravating factors outweigh
16        the mitigating factors.  I do find those other ones substantially
          outweigh; therefore, a term in the Department of Corrections is
17        warranted and an aggravated term of 7.5 years is appropriate.

18  (Respondents' Exh. G at 6)

19        ***Rule 32 Of-right Proceedings***

20        By pleading guilty, Petitioner waived his right to a direct appeal.  A.R.S. § 13-

21  4033(B); Ariz.R.Crim.P. 17.1(d).  Thus, the only available avenue of review was an "of-

22  right proceeding" under Arizona Rule of Criminal Procedure 32.  Ariz.R.Crim.P. 17.1(d).

23  Accordingly, on December 6, 2004, Petitioner filed a notice of post-conviction relief under

24  Ariz.R.Crim.P. 32.  (Respondents' Exh. I) The court appointed counsel who advised the

25  court that he was "unable to find any claims for relief to raise in post-conviction relief

26

27  possession, use, or threatened use of a deadly weapon or dangerous instrument during the
    commission of a crime;" and *State v. Gomez*, 211 Ariz. 494, 502 n. 9, 123 P. 3d 1131, 1139
28  (2005)(same); *United States v. Narte*, 197 F.3d 959, 964-65 (9th Cir. 1999).

1    proceedings." (Respondents' Exh. J)  Thereafter, on June 1, 2005, Petitioner filed a *pro se*

2    petition for post-conviction relief raising the following claims:

3           1.  Trial counsel rendered ineffective assistance by failing to explain
            the significance of waiving Petitioner's rights under *Blakely v. Washington*,
4           542 U.S. 296 (2004);

5           2.  Petitioner's waiver of his *Blakely* rights was "illegitimate" and amounted
            to "out and out coer[c]ion & reprisal;" and
6
            3.  Counsel was ineffective because he permitted Petitioner to enter the
7           guilty plea "oblivious to its gravity and ramifications."

8    (Respondents' Exh. L at 1-2)

9           On September 1, 2005, the trial court denied post-conviction relief finding that

10   Petitioner "failed to show a colorable claim for relief."  (Respondents' Exh. N)

11                   ***Appeal of Rule 32 of-Right Proceeding***

12          On September 27, 2005, Petitioner petitioned the Arizona Court of Appeals for

13   review of the trial court's denial of his Rule 32 petition. (Respondents' Exh. O) Petitioner

14   raised the same claims that he had presented to the trial court regarding ineffective

15   assistance of counsel and the legitimacy of his *Blakely* waiver.  He also added a claim that

16   his actual sentence violated *Blakely*.  (Respondents' Exh. O) On July 28, 2006, the appellate

17   court denied review. (Respondents' Exh. P) Petitioner sought review in the Arizona

18   Supreme Court which was denied on November 21, 2006.  (Respondents' Exhs. Q-T)

19                   ***Petition for Writ of Habeas Corpus***

20          Thereafter, Petitioner filed a timely Petition for Writ of Habeas Corpus raising

21   three claims:

22   **Ground One**:

23          (a) Counsel was ineffective assistance because he failed to advise Petitioner
            of his right to have a jury find aggravating factors and never "illuminated"
24          the significance of paragraph 7 of the plea agreement which waive
            Petitioner's *Blakely* rights, therefore, Petitioner's plea, including the *Blakely*
25          waiver, was not knowingly and voluntarily made;

26          (b) Petitioner's *Blakely* waiver is unconstitutional; and

27          (c) Counsel failed to explain why Petitioner could not receive the benefit
            of the "reasonable doubt" standard.
28

1
2

**Ground Two:**  The trial court violated Petitioner's Fifth, Fourteenth, and Sixth Amendment rights by "double-counting" – using Petitioner's prior convictions first to enhance and then to aggravate Petitioner's sentence.

3
4

**Ground Three:** The sentencing judge violated *Blakely v. Washington*, 542 U.S. 296 (2004) by relying on his "release status," an aggravating fact that was not determined by a jury.

5      (docket # 7 at 5-7)

6      **II.  Exhaustion and Procedural Default**

7           Respondents assert that Petitioner failed to fairly present Grounds 2 and 3 to the state

8      courts, resulting in a procedural default of those claims which prevents this Court from

9      reaching the merits of those claims.  Petitioner has not filed a response.

10          **A.  Relevant Law**

11          The Supreme Court has repeatedly held that state courts should be given the first

12     opportunity to consider a state prisoner's assertion that his state conviction and/or sentence

13     violates federal law. *Williams v. Taylor*, 529 U.S. 420, 436-37 (2000); *O'Sullivan v.*

14     *Boerckel*, 526 U.S. 838, 842 (1999); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

15     Accordingly, before a federal court may grant a state prisoner habeas corpus relief, the

16     prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1);

17     *Williams*, 529 U.S. at 436-37; *O'Sullivan*, 526 U.S. at 842.  The requirement that state

18     prisoners first present their claims in federal court, or exhaust their state court remedies, is

19     intended "to prevent 'unnecessary conflict' between courts equally bound to guard and

20     protect the rights secured by the Constitution."  *Picard v. Connor*, 404 U.S. 270, 275-276

21     (1971).  In view of the exhaustion requirement, the federal court will not entertain a petition

22     for writ of habeas corpus unless the state prisoner has exhausted his federal claims in state

23     court.  *Pliler v. Ford*, 542 U.S. 225, 230 (2004); *Rose v. Lundy*, 455 U.S. 509, 521-22

24     (1982).

25          To properly exhaust a claim in the state courts, a petitioner must have afforded the

26     state courts the opportunity to rule upon the merits of his federal claims by "fairly

27     presenting" them to the state's "highest" court in a procedurally appropriate manner.

28     *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

1   (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must

2   'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the

3   federal nature of the claim."). The Ninth Circuit Court of Appeals has concluded that, in

4   Arizona, in the context of a petitioner who has not been sentenced to death, the "highest

5   court" requirement is satisfied if the petitioner has presented the claim to the Arizona Court

6   of Appeals either on direct appeal or in post-conviction proceedings. *Swoopes v. Sublett*,

7   196 F.3d 1008, 1010 (9th Cir. 1999); *Beyart v. Schriro*, 2006 WL 1305275, * 3 n. 2 (D.Ariz.

8   2006) ("Arizona law no longer requires that a life sentence case be appealed to the Arizona

9   Supreme Court.")

10         To fairly present his claims, a petitioner must describe both the operative facts and

11   the federal legal theory. *Reese*, 541 U.S. at 28. It is not enough that all of the facts

12   necessary to support the federal claim were before the state court or that a "somewhat

13   similar" state law claim was raised." *Reese*, 541 U.S. at 28 (stating that a reference to

14   ineffective assistance of counsel does not alert the court to federal nature of the claim).

15   Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee

16   upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th

17   Cir. 2001). Similarly, general appeals to broad constitutional principles, such as due

18   process, equal protection, and the right to a fair trial, are insufficient to establish fair

19   presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th

20   Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*,

21   223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal

22   to a constitutional guarantee," such as a naked reference to "due process," or to a

23   "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution of

24   the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152,

25   162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be

26   decided "on the same considerations" under state or federal law, the petitioner must make

27   the federal nature of the claim "explicit either by citing federal law or the decision of the

28   federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim

- 6 -

1   to the state court if the court must read beyond the pleading filed in that court to discover the

2   federal claim.  *Reese*, 541 U.S. at 27.

3        Where a habeas petitioner has failed to "fairly present" his federal claims to the

4   state's highest available court in a procedurally appropriate manner, state court remedies

5   may, nonetheless, be "exhausted."  This type of exhaustion is often referred to as

6   "procedural default" or "procedural bar." *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991);

7   *Coleman*, 501 U.S. at 731-32. There are two categories of procedural default.

8        First, a state court may have applied a procedural bar, such as waiver or preclusion,

9   when the prisoner attempted to raise the claim in state court.  *Nunnemaker*, 501 U.S. at 802-

10  05.  Thus, a state prisoner may be barred from raising federal claims that he did not preserve

11  in state court by making a contemporaneous objection at trial, on direct appeal, or when

12  seeking post-conviction relief.  *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (stating

13  that failure to raise contemporaneous objection to alleged violation of federal rights during

14  state trial constitutes a procedural default of that issue.); *Thomas v. Lewis*, 945 F.2d 1119,

15  1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of

16  Appeals held that habeas petitioner had waived claims by failing to raise them on direct

17  appeal or in first petition for post-conviction relief.)  If the state court also addressed the

18  merits of the underlying federal claim, the "alternative" ruling does not vitiate the

19  independent state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer*

20  *v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance

21  of counsel claims "barred under state law," but also discussed and rejected the claims on the

22  merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling"

23  and the claims were procedurally defaulted and barred from federal review).  A higher

24  court's subsequent summary denial of review affirms the lower court's application of a

25  procedural bar.  *Nunnemaker*, 501 U.S. at 803.

26      In the second procedural default scenario, where a state prisoner failed to present his

27  federal claims in state court returning to state court would be "futile" because the state

28  courts' procedural rules, such as waiver or preclusion, would bar consideration of the

1  previously unraised claims.  *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); Ariz. R. Crim. P.

2  32.1, 32.2(a) & (b); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185

3  Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is

4  precluded for claims waived at trial, on appeal, or in any previous collateral proceeding);

5  32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty

6  days of trial court's decision).  A state post-conviction action is futile where it is time-

7  barred.  *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997)

8  (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an

9  Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

10  Arizona courts have consistently applied their procedural default rules.  *Stewart v. Smith*,

11  536 U.S. 856, 860 (2002)(holding that Arizona Rule of Criminal Procedure 32.2(a) is an

12  adequate and independent procedural bar); *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir.

13  1998) (rejecting the argument that Arizona courts have not "strictly or regularly followed"

14  Rule 32); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992)(rejecting the assertion that

15  Arizona courts' application of procedural default rules had been "unpredictable and

16  irregular.").

17         In either case of procedural default, federal review of the claim is barred absent a

18  showing of "cause and prejudice" or a "fundamental miscarriage of justice."  *Dretke v.*

19  *Haley*, 541 U.S. 386, 393-94, (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To

20  establish "cause," a petitioner must establish that some objective factor external to the

21  defense impeded his efforts to comply with the state's procedural rules.  *Id.*  The following

22  objective factors may constitute cause: (1) interference by state officials, (2) a showing that

23  the factual or legal basis for a claim was not reasonably available, or (3) constitutionally

24  ineffective assistance of counsel.  *Id.*  Ordinarily, the ineffective assistance of counsel in

25  collateral proceedings does not constitute cause because "the right to counsel does not

26  extend to state collateral proceedings or federal habeas proceedings." *Martinez-Villareal v.*

27  *Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).  To establish prejudice, a prisoner must

28  demonstrate that the alleged constitutional violation "worked to his actual and substantial

- 8 -

1  disadvantage, infecting his entire trial with error of constitutional dimension." *United States*

2  *v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

3  Where petitioner fails to establish cause, the court need not reach the prejudice prong.

4        A federal habeas court may also review the merits of a procedurally defaulted claim

5  if the petitioner demonstrates that failure to consider the merits of his claim will result in a

6  "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

7  "fundamental miscarriage of justice" occurs when a constitutional violation has probably

8  resulted in the conviction of one who is actually innocent. *Id.*  To satisfy the "fundamental

9  miscarriage of justice" standard, petitioner must establish that it is more likely than not that

10  no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

11  evidence. *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B).  Even if petitioner asserts a

12  claim of actual innocence to excuse his procedural default of a federal claim, federal habeas

13  relief may not be granted absent a finding of an independent constitutional violation

14  occurring in the state criminal proceedings. *Dretke*, 541 U.S. at 393-94.

15        **B. Application of Law to Petitioner's Claims**

16        Respondents assert that because Petitioner did not fairly present Grounds 2 and 3 to

17  Arizona courts, those claims are procedurally defaulted and barred from federal review.

18  Specifically, Respondents claim that Petitioner never presented the following claims to the

19  state courts: (1) Ground 2: the trial court violated Petitioner's Fifth, Sixth, and Fourteenth

20  Amendment rights by "double counting" his prior convictions first to enhance his sentence,

21  and then to aggravate his sentence; and (2) Ground 3: Petitioner was denied his Sixth

22  Amendment right to have a jury determine the aggravating factor regarding whether he

23  committed the offense while released on parole.  (docket # 7 at 6-7)

24        Neither Petitioner's petition for post-conviction relief pursuant to Rule 32, nor his

25  petition for review by the Arizona Court of Appeals include the "double-counting" claim

26  raised in Ground 2 or the aggravating-factor claim raised in Ground 3.  (Respondents' Exhs.

27  L, O)  The state courts should be afforded the first opportunity to consider a state prisoner's

28  claim that his conviction and/or sentence violates his federal rights. *Williams*, 529 U.S. at

1   436-37.  Petitioner's failure to fairly present Grounds 2 and 3 to the Arizona courts renders

2   those claims technically exhausted, but procedurally defaulted because he is unable to return

3   to state court to fairly present those claims.  First, the deadlines for seeking post-conviction

4   relief have "long passed."  Ariz.R.Crim.P. 32.4 (providing that a Rule 32 notice of post-

5   conviction relief "must be filed within ninety days after entry of judgment and sentence or

6   within thirty days after the issuance of the order and mandate in the direct appeal, whichever

7   is the later."); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989)(affirming the dismissal of a

8   habeas petition, in part, because the Arizona petitioner lacked a "currently available state

9   remedy at the time of the federal petition."); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir.

10  2002)(holding that Arizona habeas petitioner's unexhausted claims would be procedurally

11  defaulted "because he is now time-barred under Arizona law from going back to state

12  court.") Additionally, Arizona law would preclude Petitioner from raising grounds 2 and 3

13  in a subsequent post-conviction petition because the arguments he raises in grounds 2 and 3

14  should have been raised in his first petition for post-conviction relief.  Ariz.R.Crim.P.

15  32.2(a)(3)(precluding any claim that has been "waived at trial, on appeal, or in any previous

16  collateral proceedings.")

17          The Arizona procedural rules that bar Petitioner from returning to state court to

18  present grounds 2 and 3 to the Arizona courts are "independent" of federal law and are

19  "adequate" in terms of their consistent enforcement.  *See Stewart v. Smith*, 536 U.S. 856,

20  859-61 (2002)(holding that Arizona's "Rule 32.2(a)(3) does not require courts to evaluate

21  the merits of a particular claim, but only to categorize the claim," and "Rule 32.2(a)(3)

22  determinations are independent of federal law because they do not depend upon a federal

23  constitutional ruling on the merits," and thus the trial court decision not to reach the merits

24  of petitioner's ineffective-assistance claim because petitioner "failed to raise it in prior

25  petitions for post-conviction relief," constituted a decision that was "independent of federal

26  law."); *Poland v. Stewart*, 169 F.3d 573, 585 (9th Cir. 1999)(noting that "Arizona's

27  procedural rules are consistently and regularly followed and are adequate to bar federal

28  review."); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1006)(finding "no

1 merit" to petitioner's "contention that the Arizona Supreme Court has not regularly and

2 consistently denied relief on procedural default" and noting that petitioner "has not pointed

3 to any Arizona decisions after our *Carriger* [*v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992)]

4 opinion which show that Arizona has since become inconsistent and irregular in its reliance

5 on procedural default.").

6 **C. "Cause and Prejudice" or "Fundamental Miscarriage of Justice"**

7 In view of Petitioner's procedural default of Grounds 2 and 3, in order to obtain

8 federal review of those claims, Petitioner must establish either "cause and prejudice" or a

9 "fundamental miscarriage of justice."  As discussed below, Petitioner does not establish a

10 basis to overcome the procedural default of Grounds 2 and 3.

11 Under the "cause and prejudice" test, Petitioner bears the burden of establishing that

12 some "objective factor external to the defense impeded" his compliance with Arizona's

13 procedural rules.  *House v. Bell*, ___ U.S.___, 126 S.Ct. 2064, 2076, 77 (2006); *Moorman v.*

14 *Schriro*, 426 F.3d 1-44, 1058 (9th Cir. 2005).  Petitioner does not offer any explanation for

15 his failure to properly exhaust Grounds 2 and 3.  Petitioner's *pro se* status and ignorance of

16 the law do not satisfy the cause standard. *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d

17 905, 908 (9th Cir. 1986).  Where petitioner fails to establish cause for his procedural default,

18 the court need not consider whether petitioner has shown actual prejudice resulting from the

19 alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Therefore,

20 Petitioner has failed to carry his burden of proof regarding cause and prejudice.

21 Petitioner also fails to establish that failure to consider the claims raised in Grounds 2

22 and 3 would result in a fundamental miscarriage of justice.  *Schlup*, 513 U.S. at 327.

23 Accordingly, Petitioner's Grounds 2 and 3 are procedurally defaulted and barred from

24 federal habeas corpus review.

25 **III.  Analysis**

26 After discussing the standard of review, the Court will consider the merits of

27 Petitioner's properly exhausted claims raised in Ground 1.

28 **A. Standard of Review**

- 11 -

1    In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

2  ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner

3  applications in order to prevent federal habeas 'retrials' and to ensure that state-court

4  convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S.

5  685, 693 (2002).

6    Under the AEDPA, a state prisoner "whose claim was adjudicated on the merits in

7  state court is not entitled to relief in federal court unless he meets the requirements of 28

8  U.S.C. § 2254(d)." *Price v. Vincent*, 538 U.S. 634, 638 (2003).  Thus, a state prisoner is not

9  entitled to relief unless he demonstrates that the state court's adjudication of his claims

10  "resulted in a decision that was contrary to, or involved an unreasonable application of,

11  clearly established Federal law, as determined by the Supreme Court of the United States" or

12  "resulted in a decision that was based on an unreasonable determination of the facts in light

13  of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2); *Carey*

14  *v. Musladin*, ___ U.S. ___, 127 S.Ct. 649, 653 (2006); *Lockyer v. Andrade*, 538 U.S. 63, 75-

15  76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).  To determine whether a

16  state court ruling was "contrary to" or involved an "unreasonable application" of federal

17  law, courts must look exclusively to the holdings of the Supreme Court which existed at the

18  time of the relevant state-court decision.  *Mitchell v. Esparza*, 540 U.S. 12, 15-15 (2003);

19  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

20    Accordingly, the Ninth Circuit has acknowledged that it cannot reverse a state court

21  decision merely because it conflicts with Ninth Circuit precedent on a federal constitutional

22  issue.  *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062,

23  1069 (9th Cir. 2003).  Additionally, even if the state court neither explained its ruling nor

24  cites United States Supreme Court authority, the reviewing federal court must nevertheless

25  examine Supreme Court precedent to determine whether the state court reasonably applied

26  federal law.  *Early v. Packer*, 537 U.S. 3, 8 (2003).  The United States Supreme Court has

27  expressly held that citation to federal law is not required and that compliance with the

28

1   habeas statute "does not even require awareness of our cases, so long as neither the

2   reasoning nor the result of the state-court decision contradicts them." *Id.*

3        A state court's decision is "contrary to" federal law if it applies a rule of law "that

4   contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

5   facts that are materially indistinguishable from a decision of [the Supreme Court] and

6   nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v.*

7   *Esparza*, 540 U.S 12, 14 (2003)(citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411

8   (2000).

9        A state court decision involves an "unreasonable application of" federal law if the

10  court identifies the correct legal rule, but unreasonably applies the rule to the facts of a

11  particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005).   An

12  incorrect application of state law does not satisfy this standard. *Yarborough v. Alvarado*,

13  541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the

14  state court's decision is objectively unreasonable.")  "It is not enough that a federal habeas

15  court, in its independent review of the legal question," is left with the "firm conviction" that

16  the state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75.  Rather, the petitioner

17  must establish that the state court decision is "objectively unreasonable." *Middleton v.*

18  *McNeil*, 541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

19       Where a state court decision is deemed "contrary to" or an "unreasonable application

20  of" clearly established federal law, the reviewing court must next determine whether it

21  resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

22  Habeas relief is warranted only if the constitutional error at issue had a "substantial and

23  injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507

24  U.S. 619, 631 (1993).  In § 2254 proceedings, the federal court must assess the prejudicial

25  impact of a constitutional error in a state-court criminal proceeding under *Brecht's* more

26  forgiving "substantial and injurious effect" standard, whether or not the state appellate court

27  recognized the error and reviewed it for harmlessness under the "harmless beyond a

28  reasonable doubt" standard set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967).  *Fry*

- 13 -

1    *v. Pliler*, ___ U.S.___, 127 S.Ct. 2321, 2328 (2007).  The *Brecht* harmless error analysis also

2    applies to habeas review of a sentencing error.  The test is whether such error had a

3    "substantial and injurious effect" on the sentence.  *Calderon v. Coleman*, 525 U.S. 141, 145-

4    57 (1998) (holding that for habeas relief to be granted based on constitutional error in capital

5    penalty phase, error must have had substantial and injurious effect on the jury's verdict in

6    the penalty phase.); *Hernandez v. LaMarque*, 2006 WL 2411441 (N.D.Cal., Aug. 18, 2006)

7    (finding that even if the evidence of three of petitioner's prior convictions was insufficient,

8    petitioner was not prejudiced by the court's consideration of those convictions because the

9    trial court found four other prior convictions which would have supported petitioner's

10    sentence.)  The Court will review Petitioner's claims under the applicable standard of

11    review.

12    **B.  Ground One**

13    Petitioner's first ground for relief includes several subparts which allege ineffective

14    assistance of counsel and challenge the voluntariness of Petitioner's guilty plea, including

15    his waiver of his Sixth Amendment right to have a jury determine aggravating factors

16    beyond a reasonable doubt.  (Respondents' Exh. 7 at 5)

17    **1.  Ground 1(a) - Ineffective Assistance of Counsel/ Voluntariness of Plea**

18    In Ground 1(a) Petitioner asserts that his guilty plea was not voluntary and intelligent

19    because counsel rendered ineffective assistance in failing to explain the significance of

20    waiving his rights under *Blakely*.  (docket # 7 at 5) The State court rejected this claim on

21    post-conviction review.  Although the court did not explain its ruling, this Court must still

22    consider Supreme Court precedent to determine whether the state court reasonably applied

23    the applicable federal law. *Early*, 537 U.S. at 8.

24    To prevail on a claim of ineffective assistance of counsel, Petitioner must establish

25    that  (1) counsel's representation fell below an objective standard of reasonableness; and (2)

26    he was prejudiced thereby.  *Strickland v. Washington*, 466 U.S. 668, 688-692 (1984).

27    Courts engage a strong presumption that counsel's conduct falls within the wide range of

28    professional assistance.  *Strickland*, 466 U.S. at 689-90.   The *Strickland* test also applies to

1 challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474

2 U.S. 52, 59 (1985). A defendant who pleads guilty based on counsel's advice may attack the

3 voluntary and intelligent character of the plea by showing that the advice he received from

4 counsel fell below the level of competence expected of attorneys in criminal cases. *Id.* at 56.

5 To establish prejudice in the context of a plea, petitioner must establish that there is "a

6 reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

7 would have insisted on going to trial." *Hill*, 474 U.S. at 59. Where petitioner cannot

8 establish prejudice, the court need not reach the performance prong. *Strickland*, 466 U.S. at

9 697; *Williams v. Calderon*, 52 F. 3d 1465, 1470 (9th Cir. 1995).

10          In this case, Petitioner does not make any showing that counsel's advice to waive his

11 *Blakey* rights and enter the guilty plea fell below an objective standard of reasonableness.

12 During plea negotiations, the government may properly demand that a defendant waive

13 constitutional or statutory rights as part of the plea agreement as long as defendant is free to

14 reject the government's demand. *United States v. Navarro-Botello*, 912 F.2d 318, 321-22

15 (9th Cir. 1990). In this case, in return for Petitioner's waiver of his *Blakely* rights as part of

16 the plea agreement, the State agreed to drop a second count of aggravated driving under the

17 influence, the allegations of seven additional prior felony convictions, and the allegation that

18 Petitioner had committed the offense while on parole. Had Petitioner proceeded to trial with

19 those additional allegations and was found guilty, he would have faced a much harsher

20 sentence. (Respondents' Exh. G at 5) A defendant suffers no prejudice from entering into a

21 plea agreement that requires him to waive a right where the agreement substantially reduces

22 the sentence that he likely would have received had he been convicted by a jury. *United*

23 *States v. Baramydka*, 95 F.3d 840, 846-47 (9th Cir. 1996). Thus, even assuming that

24 counsel's performance was deficient in advising that Petitioner waive his *Blakey* rights,

25 Petitioner cannot establish that he suffered prejudice and his claim of ineffective assistance

26 fails. *Strickland*, 466 U.S. at 697.

27          Moreover, the record indicates that Petitioner knowingly and voluntarily entered his

28 guilty plea. *See*, *Boykin v. Alabama*, 395 U.S. 238, 243 n. 5 (1969)(stating that for a guilty

1   plea to be valid, it must be knowing and voluntary).  During the change of plea proceedings,

2   Petitioner advised the trial court that he understood the sentencing range, including the

3   stipulated 7.5 year sentence, for the crime to which he was pleading guilty.  (Respondents'

4   Exh. E at 4) Specifically, the trial court explained, "What you must understand about this

5   crime, it does carry a presumptive sentence of 4.5 years in the Department of Corrections,

6   minimum sentence of 3 years, to be decreased down to 2.25 years, if exceptional

7   circumstances findings are made.  Maximum sentence is 6 years in the Department of

8   Corrections, could be increased up to 7.5 years, if exceptional circumstances findings are

9   made.  Probation is not available."  (Respondents' Exh. E at 4-5);(A.R.S. § 13-602, §13-702,

10  §13-702.01)  Petitioner affirmed that he understood the "sentencing possibilities."

11  (Respondents' Exh. E at 5) Significantly, Petitioner affirmed that he was "stipulating to be

12  sentenced to a term in the Department of Corrections for 7.5 years, [and to] pay a $250

13  alcohol abatement fee."  (Respondents' Exh. E at 5)  Petitioner further stated that he

14  understood the waiver of his "case law right" under *Blakely* to have "any aggravating factors

15  proven to a jury."  (Respondents' Exh. E at 8) Specifically, the court advised Petitioner that,

16  "You also have a case law right, sir, under *United States v. Blakely* to have any aggravating

17  factors proven to a jury.  Would you also like to give up that right as contained in Paragraph

18  7, sir?"  (Respondents' Exh. E at 8) Petitioner responded, "Yes." (*Id.*)

19        Petitioner now claims that he did not knowingly and intelligently enter the plea

20  because counsel failed to explain the significance of *Blakely*.  Under oath during the change

21  of plea hearing, Petitioner advised the court that he had discussed the plea agreement with

22  counsel and understood its terms, including the *Blakey* waiver.  Petitioner's statements to the

23  trial court that he understood the possible sentence he was facing and agreed to waive his

24  right to have a jury determine aggravating circumstances, "carry a strong presumption of

25  verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)(defendants' statements at plea

26  hearing "carry a strong presumption of verity" and "constitute a formidable barrier" at later

27  proceedings); *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986)(noting that statements

28  made by a defendant at the time of entering a plea should be accorded great weight.)

1    Federal appellate courts have upheld guilty pleas against challenges based on defendant's

2    disavowal of statements made under oath in court regarding the voluntariness of the plea.

3    *See*, *Sanchez v. United States*, 50 F.3d 1448, 1455 (9th Cir. 1995)(stating that "during the

4    plea colloquy, [defendant] specifically denied that any threats and coercions had been used

5    against him. Courts generally consider such responses to be strong indicators of the

6    voluntariness of the defendant's plea."); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th

7    Cir. 1987)(rejecting defendant's claim that he had been promised a lesser sentence in view

8    of defendant's affirmation to the trial court that no sentencing-related promises had been

9    made); *Agtas v. Whitley*, 836 F.2d 1233, 1235 (9th Cir. 1988) (rejecting defendant's post-

10   conviction claim he was impaired, based upon avowal in court during the change of plea

11   hearing that he had not taken any drugs before the hearing).  Additionally, the trial court did

12   not commit a federal constitutional error by accepting Petitioner's statements made under

13   oath at the change-of-plea hearing.  *United States v. Cothran*, 202 F.3d 279, 284 (5th Cir.

14   2002).

15          Absent any evidence in the record suggesting that the guilty plea was not voluntary

16   and intelligent, Petitioner's claim to the contrary should be denied.

17          In their Answer, Respondents alternatively argue that to the extent that Petitioner's

18   claim can be construed as an attack of his sentence in violation of *Blakely*, his claim fails.

19   Because the Court finds that Petitioner's guilty plea and waiver of his *Blakely* rights was

20   knowing and voluntary, it need not reach this alternative argument.  Moreover, as discussed

21   in Section II, *supra*, Petitioner has not exhausted such a claim.

22          **2.  Ground 1(b) - *Blakely* Waiver**

23          In Ground 2(b), Petitioner asserts that his waiver of his *Blakely* rights violates the

24   Sixth Amendment and that he had no choice other than to agree to the *Blakely* waiver.

25   (docket # 7 at 5) In support of his claim, Petitioner cites a July 16, 2004 article that appeared

26   on http://yumasun.com in which a defense attorney rejected a prosecutor's offer of a *Blakely*

27   waiver. (docket # 7 at 5, Exh. A) Additionally, Petitioner cites a posting that appeared on

28   Sentencing Law and Policy, http://sentencing.typepad.com/sentencing_law_and_policy, in

1    which the chief federal public defender in Los Angeles opined that her office would reject

2    *Blakely* waivers in most cases.  (docket # 7 at 5, Exhibit B) Neither of these sources supports

3    a finding that *Blakely* waivers are unconstitutional.  Rather, they merely indicate that within

4    the first few months after the Supreme Court decided *Blakely*, defense attorneys were

5    reluctant to accept waivers of their clients' Sixth Amendment rights articulated in *Blakely*.

6           Additionally, contrary to Petitioner's assertion, a waiver of *Apprendi/Blakely* rights

7    comports with the Constitution.  In *Blakely* itself, the Supreme Court held that a defendant

8    may waive the right to have a jury, as opposed to a trial judge, determine the existence of

9    aggravating factors.  *Blakely*, 542 U.S. at 310.  Specifically, the Court stated that:

10          Justice Breyer argues that *Apprendi* works to the detriment of criminal
            defendants who plead guilty by depriving them of the opportunity to argue
11          sentencing factors to a judge.  But nothing prevents a defendant from
            waiving his *Apprendi* rights.  When a defendant pleads guilty, the State is
12          free is seek judicial sentence enhancements so long as the defendant either
            stipulates to the relevant facts or consents to judicial factfinding.  If
13          appropriate waivers are secured, are procured, States may continue to offer
            judicial factfinding as a matter of course to all defendants who plead guilty.
14
     *Blakely*, 542 U.S. at 310 (citations omitted).
15
            Finally, Petitioner's suggestion that he was forced to accept the *Blakely* waiver lacks
16
     merit.  Petitioner argues that the State exploited the fact that he had eight prior felony
17
     convictions, to "intimidate the defense" and to make the plea agreement's *Blakely* waiver,
18
     "not so much an option; it was an option or else!"  (Respondents' Exh. S at 6) Petitioner
19
     argues that had he not accepted the plea agreement, including the *Blakely* waiver, the State
20
     would have alleged all eight prior felony convictions.  Even assuming this assertion is true,
21
     it does not amount to coercion.  Petitioner, not the State, was responsible for his past felony
22
     convictions.  The fact that Petitioner faced more severe consequences if he proceeded to
23
     trial, and lesser punishment if he accepted the plea agreement, does not render the plea
24
     process unconstitutional or coercive.  *Cothran*, 302 F.3d at 284.  Moreover, during the
25
     change of plea hearing, Petitioner affirmed that he was not forced or threatened "in any
26
     way" to plead guilty.  (Respondents' Exh. E at 8).  Petitioner's waiver of his *Blakley* rights
27

28

1 │ comports with the Constitution and there is no evidence that Petitioner was coerced to waive

2 │ those rights.

3 │ **3. Ground 1(c) - Reasonable Doubt Standard**

4 │ In the final subpart of his first ground for relief, Petitioner claims that counsel failed

5 │ to explain why Petitioner could not receive the "full and just benefits of the reasonable doubt

6 │ standard which is the cornerstone of an equal and fair proceeding." (docket # 7 at 5)

7 │ This claim is a bit confusing. Petitioner appears to recast Ground 1 and again asserts

8 │ that counsel was ineffective in advising Petitioner to plead guilty and to waive his right to

9 │ have a jury determine the aggravating factors beyond a reasonable doubt. This is essentially

10 │ the same argument that Plaintiff raised in Ground 1(a) which the Court has previously

11 │ rejected.

12 │ **IV. Conclusion**

13 │ Based on the foregoing, Petitioner's Petition for Writ of Habeas Corpus should be

14 │ denied because Petitioner's claims are either procedurally barred or lack merit.

15 │ Accordingly,

16 │ IT IS HEREBY RECOMMENDED that Petitioner's Petition for Writ of Habeas

17 │ Corpus (docket # 7) be **DENIED.**

18 │ This recommendation is not an order that is immediately appealable to the Ninth

19 │ Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

20 │ Appellate Procedure, should not be filed until entry of the District Court's judgment. The

21 │ parties shall have ten days from the date of service of a copy of this recommendation within

22 │ which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules

23 │ 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within

24 │ which to file a response to the objections. Failure to timely file objections to the Magistrate

25 │ Judge's Report and Recommendation may result in the acceptance of the Report and

26 │ Recommendation by the District Court without further review. *See United States v. Reyna-*

27 │ *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual

28 │ determinations of the Magistrate Judge will be considered a waiver of a party's right to

1   appellate review of the findings of fact in an order or judgment entered pursuant to the

2   Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

3        DATED this 5th day of November, 2007.

Lawrence O. Anderson
United States Magistrate Judge